# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| GLENN L. MCGHEE,<br><br>    Plaintiff,<br><br>vs.<br><br>JERRY BARTRUFF, WILLIAM SPERFSLAGE, ALLAN DETTBARN, RAYMOND TURANO, and CARRIE KLATT,<br><br>    Defendants. | No. C17-0132-LRR<br><br>**MEMORANDUM, ORDER, and OPINION** |

_____

This matter is before the court pursuant to the defendants' motion for summary judgment. (docket no. 22).

## I.    PROCEDURAL HISTORY

Plaintiff filed this case on November 9, 2017. In his pro se complaint, plaintiff, who is incarcerated, alleged that the defendants denied him access to religious materials, including a Koran and a prayer rug. On July 6, 2018, the court conducted an initial review and allowed plaintiff's claim to proceed. Defendants filed an answer on August 2, 2018. (docket no. 8). On September 28, 2018, plaintiff filed a pro se motion to amend, alleging additional claims related to religiously appropriate meals at the prison. (docket no. 10). On December 11, 2018, the court granted the motion to amend. (docket no. 14). Defendants filed an amended answer on January 7, 2019. (docket no. 16). Defendants filed their motion for summary judgment on August 30, 2019. (docket no. 22). After several extensions, plaintiff filed a resistance on November 15, 2019. (docket no. 28).

## II. FINDINGS OF FACT

Along with their motion for summary judgment, defendants filed a statement of undisputed facts. (docket no. 22-2). Plaintiff did not file a resistance to those facts, nor did he file his own statement of facts. "[A] failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." *See* LR 56(b); *see also* Fed. R. Civ. P. 56(e).[1] Therefore, the court will treat as admitted the facts set forth in defendants' statement. Thus, the following facts are undisputed:

Plaintiff is serving a life sentence in the Iowa Department of Corrections (IDOC). In July 2017, plaintiff was involved in a "gang incident" at the Iowa State Penitentiary. He was placed in disciplinary detention and transferred to Anamosa. He was in disciplinary detention at Anamosa until October 12, 2017, when he was transferred back to the Iowa State Penitentiary. It was during this period in Anamosa that the incidents giving rise to the complaint occurred.

Defendant Jerry Bartruff is the former Director of the Iowa Department of Corrections. At the relevant times, defendant William Sperfslage was the Warden of the Anamosa State Penitentiary in Anamosa, Iowa. At the relevant times, defendant Allan Dettbarn was a senior correctional officer at the Anamosa State Penitentiary. Defendant Raymond Turano is a captain at the Anamosa State Penitentiary. Defendant Carrie Klatt is the food service director at the Anamosa State Penitentiary.

From August 7, 2017 to October 7, 2017, plaintiff lived in Unit D-3. From October 7 to October 12, 2017, he was housed in Unit B. Both of those units are for administrative segregation. Those units have rules which are contained in Defendants' Appendix. (docket no. 22-3). Those rules included a four-step grievance process,

---

[1] Plaintiff did attach several documents to his resistance, including a copy of pages from the Quran and a copy of a letter from an Islamic consultant for the Iowa Department of Corrections.

whereby an inmate must: 1) informally attempt to resolve a dispute; 2) file a grievance; 3) appeal an unfavorable result to the warden; and 4) appeal a further unfavorable result to the central/regional IDOC office. (*See* docket no. 22-3 at 57-64).

Four days after arriving in Unit D-3, plaintiff requested and received an item of his personal property prison officials apparently believed to be a copy of the Quran. On August 8, 2017, he filed a grievance requesting that he be given a prayer rug, a Quran and his address book. In response, prison officials stated he received a Quran on August 7, 2017, that per the rules prayer rugs were not allowed in his segregated unit, and no address book could be found in his property.[2] Plaintiff appealed to the Warden. In response the Deputy Warden stated:

> In your appeal you request "I be given my Holy Quran, my prayer rug, legal material and address book." I note that there appeared to be some confusion in what you were originally asking for. ASP Policy 'IO-RD-ASP-105D' allows for you to have a Quran, address book, and active legal material while on LUD-3. Prayer rugs are not allowed. I also note that you are now on orientation and should have all of your property at this time."

(docket no. 22-1 at 5). It seems plaintiff received his actual Quran on October 4, 2017. Plaintiff did not appeal his grievance any further, even though the grievances procedures provided for a final appeal to the Regional Deputy Director's Office (Central Office).

Regarding the dietary issues, the IDOC policy is to not serve pork to inmates who do not eat it for religious reasons. Moreover, IDOC policy is to inform inmates about food that contains pork, and to investigate any inmate complaints about potential pork products in items served in the IDOC. Additionally, Anamosa State Penitentiary food service director/defendant Carrie Klatt contacts food manufacturers when questions arise regarding whether a particular food product contains pork. Regarding Hospitality

---

[2] It seems the book plaintiff received on August 8, 2017, was a Quranic Dictionary but not the actual Quran.

Frosted Shredded Wheat cereal, an item identified as possibly containing pork by plaintiff and other Muslim inmates, Klatt contacted the company that produced the cereal and confirmed that it is pork free. There is no indication that plaintiff ever filed a grievance regarding this issue.

As noted above, plaintiff did not provide a statement of facts, nor did he rebut defendants' statement of facts. However, he did attach several documents to his resistance. Those documents include a letter from the IDOC Islamic consultant confirming that plaintiff is Muslim and cannot eat pork; a passage from the Quran regarding dietary restrictions; a copy of the IDOC policy regarding rules and programming; information seeming to confirm that the cereal Hospitality Frosted Shredded Wheat does not have pork; and a letter from the Iowa Attorney Disciplinary Board. Additionally, in the text of his resistance, plaintiff states he attempted to appeal his grievance to the Central IDOC Office, but an officer he gave his appeal to did not deliver it. Finally, while seemingly confirming that he now has access to his Quran, prayer rug and religiously appropriate meals, he argues this case should not be dismissed because his rights may be similarly violated again in the future.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Hilde v. City of Eveleth*, 777 F.3d 998, 1003 (8th Cir. 2015) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1157 (8th Cir. 2016) (quoting *Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833, 837-38

(8th Cir. 2011). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record]… which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson*, 643 F.3d at 1042 (alternations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts'…." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (third alteration in original) (quoting *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010). "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003).

## IV.   ANALYSIS

In their motion for summary judgment, defendants make at least five arguments. First, defendants argue that plaintiff's claims are barred by 42 U.S.C. § 1997e(a) because he failed to exhaust his administrative remedies. Second, defendants argue that, even if plaintiff's complaint is taken as true, his religious rights have not been violated under the relevant Supreme Court and Eighth Circuit Court of Appeals standards. Third, defendants argue plaintiff's claims are moot because he is no longer subject to the rules of the disciplinary living unit and has access to his property. Finally, defendants argue that plaintiff's claims for monetary relief are barred by 42 U.S.C. § 1997e(e), that they are entitled to qualified immunity, and individual defendants were not involved in any of the complained of activity. The court will consider those issues below.

### A.   *Failure to Exhaust*

It is well established both by statutory law and the relevant case law, that for a prisoner to prevail in a § 1983 claim they must first exhaust their available administrative remedies.

> Section 1997e(a), as amended by the Prison Litigation Reform Act of 1996, provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Available grievance procedures must be exhausted even if the relief the inmate seeks under § 1983 was not available through those procedures. *Booth v. Churner*, 532 U.S. 731, 737–41 & n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

*King v. Iowa Dep't of Corr.*, 598 F.3d 1051, 1052 (8th Cir. 2010). The *King* case arose out of the Newton Correctional Facility in Newton, Iowa, which had a nearly identical grievance policy as the Anamosa Grievance policy outlined above. Specifically,

> NCF follows a mandatory four-step grievance procedure adopted by the State of Iowa Department of Corrections. *See* Policy No. IO–OR–06. An inmate must first seek to resolve the problem informally. If this fails, the inmate may file an Offender Grievance Complaint on a prescribed form, stating the reason for the grievance and the action requested. A grievance officer investigates the grievance and either replies to the inmate in writing or refers the matter to a grievance committee. An inmate may appeal the Grievance Response by the grievance officer or grievance committee to the warden or superintendent, who must respond within fifteen days and state reasons for his decision. If the inmate remains dissatisfied, he may appeal to the Grievance Appeal Coordinator, who must ensure that there is a response to the appeal from the appropriate source within thirty days. The entire process "will not exceed 103 days unless extensions have been given."

*King*, 598 F.3d at 1052. Like this case, the plaintiff in *King* got a partially satisfactory resolution on his grievance, so he did not continue appealing it. The district court dismissed the case, and the Eighth Circuit Court of Appeals affirmed that dismissal. *Id*. For that same reason, defendants are correct that plaintiff failed to exhaust his administrative remedies regarding the Quran/prayer rug claim because he did not continue the grievance procedure to its fourth and final step, contacting the regional IDOC office. Moreover, there is no evidence plaintiff ever filed a grievance regarding the dietary issue. Accordingly, his claims must be dismissed pursuant to 42 U.S.C. 1997e(a).

In his resistance, plaintiff argues for the first time that he attempted to file the final grievance but was thwarted by an unknown prison officer. It is true that

> [i]nmates are excused from exhausting remedies "when officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir.2005). "[A] remedy that prison officials prevent a prisoner from 'utiliz [ing]' is not an 'available' remedy under § 1997e(a)...." *Miller*, 247 F.3d at 740 (second alteration in original) (finding remedies not "available" where prison officials failed to respond to inmate's requests for grievance forms). *See also Sergent v. Norris*, 330 F.3d 1084, 1085–86 (8th Cir.2003) (per curiam) (finding prison official's

7

> failure to timely respond to grievance could show inmate had exhausted "available" remedies); *Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir.2001) (finding inmate may have exhausted remedies when MDOC prison officials refused to respond to IRR).

*Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015). In this case, plaintiff has failed to present any evidence, including an affidavit, regarding his alleged attempt to file the final grievance. The Eighth Circuit Court of Appeals has previously stated that an otherwise proper motion for summary judgment is not defeated by a self-serving affidavit filed by the plaintiff. *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473 (8th Cir. 2010). Applying that same rationale to the present case, plaintiff's late stage allegation that he attempted to file a final grievance, without any supporting documentation, is not enough to overcome the otherwise correct argument he failed to exhaust his administrative remedies.

## B. *Free Exercise and RLUIPA*

Assuming, arguendo, that plaintiff exhausted his administrative remedies, his claims would still fail, regardless of whether they were brought pursuant to the First Amendment or the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). In order to present a valid First Amendment claim against defendants, plaintiff must establish an alleged religious belief or ritual in question is based on a teaching of a religion, that the belief is sincerely held, and that the governmental action in question actually infringes upon the individual prisoners' free exercise of this belief. *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir.), *cert. denied*, 519 U.S. 874, 117 S.Ct. 193, 136 L.Ed.2d 130 (1996); *see also Goff v. Graves*, 362 F.3d 543, 547 (8th Cir. 2004). Even then, an infringement may still be proper under the four factor *Turner* test.

> Prison regulations may infringe upon prisoners' constitutional rights so long as such regulations are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). There must be a rational connection between the challenged

> regulation and the interest put forth to justify it. *Id*. Three other relevant factors are (1) the continued availability of other means of exercising the right, (2) the effect that accommodation of the right would have on other prisoners, on prison staff, and on prison resources, and (3) the existence of ready alternatives to the challenged regulation. *Id*. at 90, 107 S.Ct. 2254.

*Goff*, 362 F.3d at 549.

A prisoner's claim under RLUIPA is evaluated under a different standard than a First Amendment claim. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004). The statute provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Accordingly, RLUIPA is a more deferential standard for prisoners seeking to exercise their religious rights while incarcerated. However, the Eighth Circuit Court of Appeals continues to afford a significant degree of deference to the expertise of prison officials in evaluating whether they met that burden. *Murphy*, 372 F.3d at 987. RLUIPA requires a prisoner to show "that there is a substantial burden on his ability to exercise his religion." *Id*. at 988 (citing 42 U.S.C. § 2000cc–2(b)). To constitute a "substantial burden," government policy or actions:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs;

9

must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 832 (8th Cir. 2009).

This case involves three potential issues, plaintiff having access to his Quran, having access to a prayer rug, and having religiously appropriate (pork free) meals. Defendants agree that plaintiff is entitled to his Quran and religiously appropriate meals. And, based on the facts discussed above, there is no dispute that the food items at issue were religiously appropriate and pork free. Additionally, as soon as plaintiff asked for his Quran, prison officials attempted to provide it to him and were, eventually, successful. Accordingly, there is no deprivation for which plaintiff would be entitled to relief regarding those two issues.

The only remaining issue is the prayer rug. The court will consider this issue under both the First Amendment and RLUIPA. Regarding the former, defendants argue that prisoners in segregation are not allowed prayer rugs for valid security related reasons. For the reasons stated in the next paragraph, plaintiff has failed to allege how the denial of the prayer rug inhibits his religious exercise. And, even assuming there is a negative impact on the exercise of plaintiff's religious exercise, as noted by the defendants, this court has previously found valid security and penological interests support prohibiting prayer rugs under a First Amendment analysis. *See Sheldon v. Carr*, 2002 WL 32172302, at *5 (N.D. Iowa 2002). The court is obligated to come to the same conclusion in this case and find the *Turner* factors favor the policy of banning prayer rugs in segregation, because no alternate facts have been put into the record.

Moreover, assuming, without deciding, that plaintiff also brought this claim pursuant to RLUIPA, he has failed to meet the threshold showing that the denial of the prayer rug implicated his religious exercise.

> Under RLUIPA, petitioner bore the initial burden of proving that the Department's [] policy implicates his religious exercise. RLUIPA protects

10

> "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," § 2000cc–5(7)(A), but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation, *see Hobby Lobby*, 573 U.S., at 717, n. 28, 134 S.Ct., at 2774, n. 28.

*Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). Nothing in his complaint, his resistance, or his attachments explains how the prayer rug implicates plaintiff's religious exercise. Plaintiff simply states he was denied a prayer rug. Because he failed to make the threshold showing that the denial of the prayer rug implicates his religious exercise, the court need not reach the question of whether denial of the prayer rug was the least restrictive means of furthering a compelling government interest. Accordingly, plaintiff's claims fail on their merits.

C.  *Remaining Issues*

Because the court has determined that plaintiff's claim is barred by 42 U.S.C. § 1997e(a) and fails on its merits, the court need not consider defendants' remaining arguments that plaintiff's claims are moot, fail as applied to individual defendants, and that defendants are entitled to qualified immunity.

V.  **CONCLUSION**

For the reasons set out above, defendant's motion for summary judgment (docket no. 22) is **granted** and this case is **dismissed**. However, because this dismissal is based on 42 U.S.C. § 1997e(a) it is without prejudice.

**IT IS SO ORDERED.**

**DATED** this 13th day of March, 2020.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA